UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO: 22-CR-60084-RS

UNITED STATES OF AMERICA,

       Plaintiff,

vs.

JULIO MITJANS,

       Defendant.

_____/

**DEFENDANT'S SENTENCING MEMORANDUM IN RE: VARIANCE**

**COMES NOW** the Defendant, JULIO MITJANS, by and through undersigned counsel, and pursuant to 18 U.S.C. §§ 3553(a), and 3661, respectfully moves this Honorable Court for a variance from the <u>advisory</u> sentence recommended by the Presentence Report ("PSR"), and as cause would aver to the Court as follows:

1.      Pursuant to <u>United States v. Booker</u>, 543 U.S. 220 (2005), the United States Sentencing Guidelines (USSG) are no longer mandatory, but, rather, <u>advisory</u>.  Although the Court must "consult" and "take into account" the guidelines at sentencing, the Court may <u>still</u> impose a "more severe or more lenient sentence" than that set forth in the guideline ranges. <u>United States v. Crawford</u>, 47 F.3d 1174, 1178 (11th Cir. 2005).  Accordingly, it appears that the Court must first calculate the guideline range, and then implement its authority to impose a sentence that is within that range, less than that range, or more than that range. <u>Id.</u>  All the while, the Court must keep in mind the dictates of 18 U.S.C. § 3553(a) that requires that "the Court shall impose a sentence <u>sufficient</u>, but <u>no greater than necessary</u>, ("the Parsimony Provision"), to comply with the purposes set forth in paragraph 2 of that subsection.

2.      The sentencing court does not enjoy the benefit of a legal presumption that the guidelines sentence should apply, (See Rita v United States, 551 U.S. 338 (2007); see also Nelson v. United States, 555 U.S. 350 (2009)), nor are they "presumed reasonable." See United States v. Sachsenmaier, 491 Fed. 3d 680 (7th Cir. 2007). As has been espoused by the Supreme Court of the United States, the District Court may impose a below-guideline sentence simply because it disagrees with the policy decision underlying the specific guideline. See Spears v. United States, 555 U.S. 261 (2009). The guidelines are but one factor in a determination of sentencing which should not be given more or less weight than any other factor. See United States v. Carter, 530 F.3d 565 (7th Cir. 2008); see also United States v. Carty, 520 F.3d 984 (9th Cir. 2008). There is no "thumb on the scale" favoring a guideline sentence. Sachsenmeier, supra.

3.      In general terms, 18 U.S.C. § 3553 provides that sentencing must be imposed with an eye toward punishment, deterrence, protection and rehabilitation. Booker further directs that the sentencing Court must take into account all of the factors that are outlined in 18 U.S.C. § 3553. Booker, 543 U.S. 220 (2005). Among those factors are the nature and circumstances of the offender and the history and characteristics of the Defendant. In addition, 18 U.S.C. § 3553 provides that "no limitation shall be placed on the information concerning the background, character and conduct of a person convicted of an offense which the Court may receive for the purpose of imposing an appropriate sentence." Here, the PSR calculates that Mr. Mitjans's sentencing range is between thirty-seven and forty-six months.

4.      Additionally, this Defendant's sentence should reflect a consideration of his background, lack of prior involvement in the criminal justice system, and the impact a sentence of incarceration would have on the remainder of his life, the community at large, and his family, especially on his young children. It is axiomatic, and obvious, that a sentence of incarceration,

2

however long or short, is significantly more onerous on an individual at age forty-eight than it would be on an individual at age twenty-five. The Court, in utilizing, and complying with 18 U.S.C. § 3553, can fashion a sentence that would be just as fair, and would satisfy all four of the sentencing prerogatives as to Mr. Mitjans, yet would still follow and abide by the sentencing goals set forth in that section.

5.      Sentencing on matters relating to guidelines have been tempered by the application of Booker, 543 U.S. 220 (2005), Koon v. United States, 518 U.S. 81 (1996) and Kimbrough v. United States, 552 U.S. 285 (2007), as those cases generally, stand for the proposition that the guidelines are advisory only, and that the Court, although it must consider those guidelines, is not bound by them.  Multiple reasons exist why the Court's discretion in applying these guidelines should be exercised to eliminate the enhancement in this case:

a.      18 U.S.C. § 3553(a) Issues

The above rationale similarly supports the Court's finding that a sentence bereft of this enhancement meets the requirements and objectives of 18 U.S.C. § 3553(a), and specifically, that "[t]he court shall impose a sentence, sufficient but not greater than necessary" to comply with the purposes set forth within that subsection;

b.      The Advisory Guideline Sentence is Too Harsh, Excessive or "Greater Than Necessary"

In this instant cause, the guideline sentence which is suggested by probation and mandated by the guidelines is "greater than necessary," given all the other issues which this Defendant must deal with.  18 U.S.C. § 3553(a) compels this court to view not what sentence is "too harsh," but rather to analyze each sentence within the unique circumstances which each and every defendant brings to the Bar at sentencing, and which Booker and Rita have determined, requires the judicial and experienced hand of a District Court Judge, as opposed to a mere knee-jerk reaction

to an arithmetical guideline cell. <u>Booker</u>, 543 U.S. 220 (2005); <u>Rita</u>, 551 U.S. 338 (2007).  The "Parsimony Provision" <u>compels</u> the Court to consider a lesser sentence if sufficient to achieve the multi-purpose of sentencing;

        c.    <u>Exceptional Acceptance of Responsibility</u>

The Defendant in this case, on his arrest, was advised that he had been investigated by the Government for his actions in this cause.  He then immediately retained counsel, accepted responsibility for his actions and attended multiple meetings with FBI Agent, Angel Martinez, among others, over several months of cooperation.  The Defendant readily provided any and all documents that were requested of him.

The Defendant knows and expects that his serious errors in judgment deserve a penalty for those lapses in judgment.  His early cooperation and plea have avoided expensive and protracted trial preparations and proceedings, and his acceptance of responsibility, at this early stage, especially in light of its impact on the case as a whole, and on the community awareness of his involvement in these offenses, has accomplished a significant conservation of judicial and prosecutorial resources.

This Defendant was not only prepared to cooperate in this instant cause, or any other sought by the Department of Justice, but in fact <u>offered</u> his assistance by cooperation in furtherance of investigations into operations involving Cargo Theft.  It was not until September 8, 2022, that AUSA Donald Chase advised Defendant through undersigned counsel, that the FBI had disbanded the Cargo Theft Unit.  To the current date, the Defendant stands ready to assist with any investigations, at present or in the future, by any Governmental Agency, and that effort is continuaing.

In addition, his admissions of guilt, and its public impact upon him, have provided, uniquely, an object deterrent lesson to other individuals and friends in the community who might consider similar defalcations.  In such a situation, the Court <u>may</u> grant additional reductions. <u>United States v. Lieberman</u>, 971 F.2d 989 (3rd Cir. 1992); <u>see</u> <u>United States v. Garcia</u>, 926 F.2d 125 (2nd Cir. 1991); <u>see</u> also <u>United States v. Bobb</u>, 52 Cr. L. 141 (D.C.- S.D.N.Y., 1/11/93).

        d.    <u>A Good Employment History Has Been Held To Be Supportive of Variance</u>

In <u>United States v. Ruff</u>, 535 F.3d 599 (9th Cir. 2008), as well as in <u>United States v. Fuson</u>, 215 Fed. Appx. 468 (6th Cir. 2007), and <u>United States v. Baker</u>, 445 F.3d 987 (7th Cir. 2006), this type of history has supported departure.  This Defendant's work history since emigrating from Cuba to the United States in 1998 has been exemplary, and, as such, a variance may be supported by such a showing.

        e.    <u>High Prospects of Rehabilitation</u>

The Defendant's prospects of rehabilitation are significantly more substantial, given his age, education and lack of criminal behavior in the past that would even <u>remotely</u> suggest the actions set forth in the Information in other individuals who may fall under the guidelines for the same offense.  Enhanced <u>potential</u> <u>for</u> <u>rehabilitation</u> is a factor within the Court's consideration. <u>See</u> <u>United States v. Fernandez</u>, 443 F.3d 19 (2nd Cir. 2006);

        f.    <u>Minimal or Absence of Criminal Record May Support Variance</u>

Where a Defendant has little or no prior criminal record, and/or criminal history points, the reduced recidivism predictions advanced thereby have justified variances, even probation sentences.  <u>See</u> <u>United States v. Tomko</u>, 562 F.3d 558 (3rd Cir. 2009) (en banc) (court reduced sentence to probation where the defendant's guidelines were twelve to eighteen months for a tax offense); <u>see</u> <u>United States v. Autery</u>, 555 F.3d 864 (9th Cir. 2009) (court reduced sentence, sua

sponte, to probation where the defendant's guidelines were forty-one to fifty-one months for possession of pornography); see also United States v. Reilly, 662 F.3d 754 (6th Cir. 2011) (finding the absence of, or a clean criminal past, may be considered as a variance);

g.    The Defendant's "Exceedingly Good" Behavior While on PTS Supervision

Where a Defendant's behavior while on pretrial services is exemplary, as is the Defendant's here, such behavior has been held to justify a variance from a guideline sentence range of twenty-seven to thirty-eight months to one year of house arrest, followed by probation, even where the charge was possession of an unregistered firearm, which discharged during a defendant's altercation with his wife.  United States v. Baker, 502 F.3d 465 (6th Cir. 2007).  As such, this Defendant easily qualifies for a similar variance in the instant cause.

h.    Ruination of Reputation May Support a Variance

This Defendant has had a spotless and heretofore problem-free life, providing a reputation clearly set forth in the many letters accompanying his sentencing submissions. (See attached Composite Exhibit I).  The loss of that reputation, and the accompanying stain of a permanent felony conviction, are extreme and heavy penalties that in and of themselves constitute substantial punishment.  See United States v. Libby, 495 F. Supp. 2d 49 (D.D.C. 2007); see also United States v. Adelson, 441 F. Supp. 2d 506 (S.D.N.Y. 2006);

i.    A Defendant with a High Likelihood of Never Re-Offending and/or Never Causing Danger to the Public May Support, In Either Case, a Variance

This Defendant is a good, hardworking man with a stable and loving family.  He is the epitome of a citizen who came to this country from Cuba and worked hard to achieve his current financial and personal status.  The criminal offense to which he pled is an anomaly to his life and he is extremely unlikely to re-offend.  His actions are undeniably not predictive of any future

6

criminal involvement.  As such, a variance may be supported by such a showing.  See United States v. Smith, 2008 WL 1816564 (4th Cir. April 23, 2008); see also United States v. Hein, 463 F. Supp. 2d 940 (E.D. Wis. 2006) (justifying variance from a twelve-to-eighteen-month sentence to a non-prison sentence for a defendant charged with felony possession of ammunition based on the fact that it was extremely unlikely the defendant would re-offend and/or endanger the public); see also United States v. Baker, 807 F.2d 427 (5th Cir. 1986);

          j.      Home Detentions and Probation Following a Minimum Sentence with Conditions are Sufficient and Substantial Punishments, and Satisfy the "Parsimony Provision"

       In many instances, home confinement or house arrest is, in itself, a substantial punishment. United States v. Bueno, 549 F.3d 1176 (8th Cir. 2008).  Home confinement has also been deemed a significant restriction on a Defendant's liberty, especially in light of one's age or infirmity.  See United States v. Munoz-Nava, 524 F.3d 1137 (10th Cir. 2008). This is true, even more so, where probation with a substantial community service and fines are included.  United States v. Tomko (en banc), supra.; United States v. Whitehead, 532 F.3d 991 (9th Cir. 2008).  In this cause, such a sentence would adequately satisfy the "Parsimony Provision" of U.S.C. §3553(a).

          k.      The Advisory Guideline Sentence is Too Harsh, Excessive or "Greater Than Necessary"

       In the instant cause, the guideline sentence which is suggested by probation (37-46 months) is "greater than necessary" given all the other issues which this Defendant must deal with to achieve the goals of sentencing.  18 U.S.C. § 3553(a) compels this court to view not what sentence is "too harsh," but rather to analyze it within the unique circumstances which each and every defendant brings to the Bar at sentencing, and which Booker and Rita have determined, requires the judicious and experienced hand of a District Court Judge as opposed to a mere knee-jerk reaction to an arithmetical guideline cell.  Booker, 543 U.S. 220 (2005); Rita, 551 U.S. 338

(2007).  The "Parsimony Provision" <u>compels</u> the Court to consider a lesser sentence if sufficient to achieve the multi-purpose of sentencing;

          l.     <u>The District Court May Impose a Below Guideline Sentence Simply Because It Disagrees with the Policy Decisions Underlying a Specific Guideline and Offense Level Assigned To It</u>

In the instant cause, this is particularly important, because it provides the court with the ultimate responsibility, as it should, for the structuring of a sentencing order that would adequately reflect all the unique personalities brought to the court, as well as the strengths and weaknesses of the Government's case, and the actual aberrational nature of the Defendant's activities when viewed through the prism of his life experiences.

          m.     <u>Prison Time May Be More Significant for a First Time Offender so that a Below Guideline Sentence Could Be More Just</u>

In <u>United States v. Paul</u>, 2007 WL 2384234 (9th Cir. August 17, 2007), the 9th Circuit soundly adopted such a variance rationale.  This Defendant uniquely qualifies for this variance.

          n.     <u>Defendant's Otherwise Good Character May Support a Variance</u>

In <u>United States v. Autery</u>, 555 F.3d 864 (9th Cir. 2009), the Court's <u>sua sponte</u> variance to probation was not unreasonable because of the Defendant's "positive characteristics such as his having no history of substance abuse, no interpersonal instability, no sociopathic or criminalistic attitude, his motivation and intelligence, and his support of his wife and child."  Such a pristine background, and responsibilities well met, should constitute at least the same type of variance position for the Defendant in this cause, as it did in <u>Autery</u>;

          o.     <u>Where Incarceration Was Not Necessary to "Protect the Public" a Variance Has Been Granted in the Past</u>

In <u>United States v. Baker</u>, 502 F.3d 465 (6th Cir. 2007), the court ruled that a sentence of probation with one year of house arrest was appropriate, at least in part, because the Government did not display that incarceration was necessary to protect the public.  Even more significant,

here, is this Defendant's background and experience, and the non-recidivist issues that he presents to the court, both at this time and throughout his previous life experiences;

p.     The Defendant's Early Cooperation

Immediately upon the Defendant's arrest, he made a full and cooperative statement to agents, unaccompanied by his attorney.  He then met again with the Government, with counsel, and participated in another cooperation. All of this occurred before being formally charged. Indeed, this Defendant has been, literally, at the Government's beck and call in this case on multiple occasions, in person. Included in this cooperation was his offer to continue cooperation on one individual, interrupted by the disbanding of the FBI Cargo Theft Unit that had the responsibility to continue this investigation.

6.     Although this Defendant believes that one, or several, of the individual grounds for variance made herein are consistent with a reasonable deviation from the Sentencing Guidelines, certainly, the application of all of these departure issues combined, provide this Defendant with a rational ground for the same.  Courts have uniformly held that where one individual factor may not be sufficient to deviate, certainly two or more factors may be appropriate.  See Unites States v. Rioux, 97 F.3d 648, 663 (2nd Cir. 1996); see also United States v. Paradies, 14 F. Supp. 2d 1315 (U.S.D.C. - N.G.D.A.  1998).

Especially significant is the fact that a combination of factors may constitute a "mitigating circumstance," as long as the District Court identifies that circumstance.  This is shown through the Sentencing Commission's acknowledgment of the "vast range of human conduct not encompassed by the guidelines, a unique combination of factors (which) may constitute the 'circumstance' that mitigation."   United States v. Floyd, 945 F.2d 1096, 1099 (9th Cir. 1991); see United States v. Cook, 938 F.2d 149, 153 (9th Cir. 1991).

6.    In <u>United States v. Williams</u>, 65 F.3d 301, 309-10 (2nd Cir. 1995), the Court emphasized that the "[s]entencing guidelines do not displace the traditional role of the district court in bringing compassion and common sense to the sentencing process . . . in areas where the sentencing commission has not spoken . . . district courts should not hesitate to use their discretion in devising sentences that provide individualized justice."  Indeed, the Court's own decision of what is fair and just, the historic role of the sentencing judge, may continue to be exercised, and the Court is not prohibited from including in the consideration of sentence, the judge's <u>own</u> sense of what is a fair and just sentence under all the circumstances, and which does not exceed the bounds of "reasonableness."  See <u>United States v. Jones</u>, 460 F.3d 191 (2nd Cir. 2006).  It is respectfiully urged that the Court has every right, and bears every responsibility, to take into account the human factors involved in sentencing, and to apply the Court's own sense developed through years of practice and life experience in each individual case.  This factor would permit the Court, especially under the facts in the instant case, to fashion a sentence that reflects the Court's own feelings and experiences.

7.    The Court, in utilizing, and complying with 18 U.S.C. § 3553, can fashion a sentence that would be fair, and would satisfy all four of the sentencing prerogatives as to  Mr. Mitjans, yet would still follow and abide by the sentencing factors and goals set forth in that section.  It should be further noted that factors previously prohibited by guidelines, must, in the wake of <u>Booker</u> and its progeny, be factored into the court's consideration for variances.  <u>Id.</u>; <u>see</u> <u>United States v. Severino</u>, 453 F.3d 206 (3rd Cir. 2006); <u>see also</u> <u>United States v. Gatewood</u>, 438 F.3d 894 (8th Cir. 2006); <u>see also</u> <u>United States v. Lake</u>, 419 F.3d 111, 114 (2nd Cir. 2005).

8.    That the Defendant has furthermore attached hereto letters and photographs indicating his stature, and the way he is viewed by <u>members of his own community</u> for the Court's

10

edification, and for support of the sentencing recommendations made herein (see Composite Exhibit I).

**WHEREFORE,** in consideration of the above, the Defendant respectfully moves this Court, for a variance from the advisory guidelines that this Honorable Court deems appropriate..

**I HEREBY CERTIFY** that on this 23rd day of September, 2022, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties, either by electronic transmission generated by CM/ECF, or in some other manner for those counsel or parties who are not able to receive electronic filings.

<div style="margin-left: 40%">

Respectfully submitted,

J. DAVID BOGENSCHUTZ & ASSOCIATES, P.A.
Attorneys for Defendant
633 SE 3rd Avenue, Ste. 202
Fort Lauderdale, Florida 33301
Ofc.: (954) 764-2500
/S/ J. David Bogenschutz

BY: _____
J. DAVID BOGENSCHUTZ, ESQ.
Florida Bar No. 131174
E-mail: david@bogenschutzpa.com

</div>

COMPOSITE EXHIBIT I



September 21, 2022

To Whom it may concern,

My name is Michael Compitiello and I a retired Homeland Security Investigations, Supervisory Special Agent, with 26 years of federal law enforcement experience and a total of 34 years of government service. I am writing this letter on behalf of my dear friend Julio Mitjans. I have known Julio for many years as we attend the same church, St. Gregory the Great Catholic Church. Our children
attended that same school at St. Gregory, and they all danced together at our local dance studio. I am blessed to know the whole family and I am proud to call Julio my friend and Brother Knight.

I have had the good fortune to recruit Julio into the Knights of Columbus. The Knights of Columbus is a Catholic fraternal organization, the only one recognized by The Church. Our mission is to serve God and the community. It is in this realm that Julio best shines as a man of God, a great father, and husband, but also a generous and kind man that serves his community. On many occasions Julio has supported many of the Knight's charitable initiatives. He is truly a generous man that gives of himself and cares for others.

I want to also inform you that Julio has been under a lot of pressure with horrible feelings of guilt for the last seven months.  Both myself and our mutual friend and Brother Knight Christopher Torlone have tried to provide strength and comfort to Julio. Julio has shared with us his sincere sorrow and is very ashamed of what happened.

Dedication to his promises of charity, unity and fraternity, Julio serves others as part of our continuous mission for the community. Julio currently holds a chair position in the Order, a position of trust, where he does good works. I tell you that he is an integral part of our mission and a great asset to our causes.

400 Sawgrass Corporate Parkway, #200A    954.804.2393
Sunrise, FL 33325                        786.412.9405
mike@compitielloprivateinvestigations.com

Julio is a family man as well with devotion to his wife Gretter and their beautiful children. I have witnessed his kindness and devotion to them on many occasions. He always greets everyone with a smile and sincerity. I admire his sense of duty. Since the unfortunate incident, Julio has been working hard every day at his business as well as caring for his mother who is experiencing heath issues.

Julio is also my good friend who I speak to and confide in several times a week. I often rely on his wisdom and friendship when confronted with life's obstacles.
I ask that you consider goodness in the man who stands before you. Only one man was perfect and He died for our sins.

Respectfully,

/s/ Michael Compitiello

Michael Compitiello, President

Compitiello & Associated Private Investigations

400 Sawgrass Corporate PKWY, Suite 200A

Sunrise, Florida 33325

September 14, 2022

To whom it may concern:

     I, Don Staab, General Sales Manager and General Manager of the Marine Division for Techno-Fuel LLC have known Julio C. Mitjans for five years as we've loaded Petroleum products together out of various Oil Company terminals in Port Everglades, Ft Lauderdale, Florida, when I was with another fueling company. Now I've joined forces with him and Techno-Fuel and have been employed there for three years as we've been good friends working with all fueling customers in the Yachting and boating industry as well as Major Marina's in South and North Florida serving gasoline, diesel, and other Petroleum distillate products.

     He's my Supervisor and mentor since working for him. We have a great rapport together working closely together in all aspects of the fueling business in Davie, Florida. I've actually seen Julio being a very lovable Father to his two children Gabriel and Beatrice helping with the girl's homework as well as helping his wife Senorita Gretter with her work at the office in Davie FL. Also working closely to his Papi, Dad Julio Sr. in the warehouse as well as his mother in law in the office while I was doing sales work and more at the office on many occasions.

     Julio and Gretter are firm believers in the faith of God and He is a true member of the Knights of Columbus Fraternal Light at Saint Gregory's Catholic Church in Plantation , He was named this past Tuesday Relationship Director to recruit new members for his Council.

Thanks a lot,

Don Staab Florida General Sales Manager and General Manager of the Marine Division for Techno Fuel LLC

**FRANK ANZALONE ESQ.**
4611 SOUTH UNIVERSITY DRIVE - SUITE 151
DAVIE, FL 33328
954-274-5924

September 19, 2022

Your Honor,

I have known my friend Julio Mitjans for eight years.  He is a very responsible and loving son, brother, father and husband. In addition to having a family of his own, he continues to support his parents and his siblings in every possible way he can. Julio has always been there for me when I needed to discuss any of my family issues.

When I served as a public defender for 14 years, I saw numerous offenders most of whom never thought about their victims or the impact of their actions.  The opposite is true of Julio.  He deeply regrets the offence he committed and is intent on taking full responsibility. It is my understanding that Julio obtained a financial advantage by deception.  It is an anomaly of his usual behavior.

Because he betrayed his values and his friends and family, Julio is remorseful and ashamed every time I speak with him.  He is a member of Saint Gregory Church and his children attend school there.  He has always been an outstanding citizen who takes part in church events and is a member of the Knights of Columbus.  Although he is very sad about the damage he has caused to his career and reputation, and the grave repercussions for his family, he sees his situation as an opportunity - and obligation - to make good on his core beliefs and show that a man of integrity can correct his mistakes.  He is committed to make full restitution.

I support Julio in his effort as does his family.  He is fortunate to have their loving support.  I cannot envision any further punishment to impress upon Julio the gravity of his actions than the hurt he has caused them.  He gets it.  And, I see no benefit to his victims, or society by keeping him away from a family that needs him and inhibiting his efforts to make restitution.

Julio is a first-time offender.  Leniency in sentencing seems most appropriate in his case.  Things got away from him and he knows it.  There is no doubt that he will work hard to rehabilitate his honor and go back to doing all the right things that made up his life before.

I am confident that he will not re-offend and will continue to be a valuable member of society.  And, I am willing to further testify if called upon.  Please feel free to contact me at the number above.

Sincerely,

Frank Anzalone, Esq.

Honorable Rodney Smith
United States District Court Southern District of Florida

Re: Julio Mitjans

September 19, 2022

Please accept this letter as a plead for mercy for my lifelong friend Julio Mitjans. I have known Julio for 10 years and first met him and his family at our church St. Gregory the Great located in Plantation Florida. Julio is a good man and I am a firm believer that  some very good people sometimes make mistakes. He has always showed a unique kindness for his friends and is a big supporter of our church and community. Our families are closely aligned with his children attending the same school as my children. We believe in the same principles and part of those principles is accepting responsibility for our actions. It is my understanding that he has accepted responsibility and only wishes for a second chance. He has no criminal history and is a person of compassion always willing to help anyone in need. He has supported our church and I believe that he has a close relationship to our all forgiven God, which I believe has enabled your path to cross Julio's for a reason.

As a former Army veteran and someone who has worked in Government for over 25 years, I understand the political challenges that you face sitting on the bench with the numerous people who come before you asking for mercy. I do believe Julio is different because of the character of people willing to speak on his behalf. I believe that his family, his business, and his mental health would suffer severely if he was not able to stay with his family.

Therefore, I once again ask for your Mercy when handing punishment to Julio. Should you have any questions about the character or need additional questions answered, please call me anytime.

Sincerely,

Rodney Colon
7231 SW 11 Street
Plantation, FL 33317
(954) 520-0319

**FRANK ANZALONE ESQ.**
4611 SOUTH UNIVERSITY DRIVE - SUITE 151
DAVIE, FL 33328
954-274-5924

September 19, 2022

Your Honor,

I have known my friend Julio Mitjans for eight years.  He is a very responsible and loving son, brother, father and husband. In addition to having a family of his own, he continues to support his parents and his siblings in every possible way he can. Julio has always been there for me when I needed to discuss any of my family issues.

When I served as a public defender for 14 years, I saw numerous offenders most of whom never thought about their victims or the impact of their actions.  The opposite is true of Julio.  He deeply regrets the offence he committed and is intent on taking full responsibility. It is my understanding that Julio obtained a financial advantage by deception.  It is an anomaly of his usual behavior.

Because he betrayed his values and his friends and family, Julio is remorseful and ashamed every time I speak with him.  He is a member of Saint Gregory Church and his children attend school there.  He has always been an outstanding citizen who takes part in church events and is a member of the Knights of Columbus.  Although he is very sad about the damage he has caused to his career and reputation, and the grave repercussions for his family, he sees his situation as an opportunity - and obligation - to make good on his core beliefs and show that a man of integrity can correct his mistakes.  He is committed to make full restitution.

I support Julio in his effort as does his family.  He is fortunate to have their loving support.  I cannot envision any further punishment to impress upon Julio the gravity of his actions than the hurt he has caused them.  He gets it.  And, I see no benefit to his victims, or society by keeping him away from a family that needs him and inhibiting his efforts to make restitution.

Julio is a first-time offender.  Leniency in sentencing seems most appropriate in his case.  Things got away from him and he knows it.  There is no doubt that he will work hard to rehabilitate his honor and go back to doing all the right things that made up his life before.

I am confident that he will not re-offend and will continue to be a valuable member of society.  And, I am willing to further testify if called upon.  Please feel free to contact me at the number above.

Sincerely,

Frank Anzalone, Esq.

September 20th,2022

To whom it may concern Julio C Mitjans has always been a great friend and a great Business owner I have known him for over 15 years. Always pays his bills at my business, and a fantastic customer.

From my point of view, he is an excellent father, a great husband, and a fantastic friend to me and a great customer to my business. What is interesting is that in the last couple of months he has changed for the better. I feel he has learned from his mistakes.

Regards

Roberto Ruiz
Vice President
Expert Diesel

Gretter Cancelo Alessandrini
9121 NW 14TH ST.
Plantation, FL 33322


September 18, 2022


Dear Judge Smith,

I am writing this letter to ask for your lenience on behalf of Mr. Mitjans, my husband, the defendant in the Case # 22-CR-60084-RS.

Julio Cesar Mitjans and I were married on September 22nd, 2012. Our marriage is blessed with two children Gabriela and Beatriz. They are 10 and 9 years old.

Throughout our marriage, Julio has been an excellent husband and father. He is stood to be our caregiver, responsible father, and a lovely husband.

I have known my husband since our childhood because we were born on the same town. I have known my husband to be a trustworthy, caring, and devout son, friend, and husband. He is a very hardworking person. He is well known for being a person of good character, a respectable husband and parent. He is a trusted community member of the Knights of Columbus for 5 years, where they stood up for him as a great support during this time. He worked on their ministry with enthusiasm; everyone loves him, his energy is contagious. He has been a Hope Angel to St Jude Hospital for more than 15 years donating $ 40.00 dollars every month to that noble cause.

As a wife, I have been suffering from the day he was arrested, each step has been painful for both of us. My concern today is Julio's mental and physical health. Since, he was arrested and released, he is suffering from insomnia, during his sleep period. He is shaking, and I must wake him up. As a result, he started to drink alcohol to help him go to sleep. He also increased his weight that made him come back to medical treatment for high blood pressure.

My husband has shown a tenacious and persistent attitude in overcoming this mistake effectively and successfully. I believe that severe punishment will be detrimental to us as he is the family's head, source of income and support. I ask for your lenience.

I hope you will consider my request,

Respectfully,

Gretter Cancelo Alessandrini

Julio Cesar Mitjans 'wife



**REGIONS**

Regions Bank
Plantation
400 North Pine Island Road
Plantation, FL 33324

GRETTER CANCELO
■ JULIO CESAR MITJANS

**ACCOUNT #**

| | |
|---|---|
| | 092 |
| Cycle | 26 |
| Enclosures | 0 |
| Page | 2 of 3 |

## WITHDRAWALS (CONTINUED)

| | | |
|---|---|---|
| 01/10 | MacYs | 166.25 |
| 01/10 | Capital One | 217.00 |
| 01/18 | Dvcmc Assoc Mgr. | 118.37 |
| 01/18 | D.V.D. Inc. | 347.97 |
| 01/21 | Recurring Card Transaction ST Jude Main Do  8398 800-822-6344  TN 38105   5380 | 40.00 |
| 01/21 | Daimlertruckfin | 722.26 |
| 01/25 | Recurring Card Transaction Netflix.Com | 19.45 |
| 01/31 | EB to  Vc 8 | 1,218.17 |
| 01/31 | Shop Your Way MC Payment | 68.00 |
| 01/31 | MacYs        Online Pmt | 1,500.00 |

Total Withdrawals $8,672.27

| | Total For This Statement Period | Total Calendar Year-to-Date |
|---|---|---|
| Total Overdraft Fees (may include waived fees) | 0.00 | 0.00 |
| Total Returned Item Fees (may include waived fees) | 0.00 | 0.00 |

## DAILY BALANCE SUMMARY

**AS OF 10-1-21, NEW US POSTAL SERVICE
STANDARDS MAY CAUSE DELIVERY DELAYS FOR
1ST CLASS MAIL AND PERIODICALS. TO AVOID
DELAYS WITH YOUR ACCOUNT STATEMENTS AND
PAY BILLS QUICKLY AND CONVENIENTLY, TAKE
ADVANTAGE OF ONLINE STATEMENTS AND
ELECTRONIC BILL PAYMENT AND TRANSFERS
THROUGH REGIONS ONLINE BANKING AND OUR
MOBILE APP. FOR DETAILS, PLEASE VISIT
REGIONS.COM/DIGITAL-BANKING.**



**Regions Bank**
Plantation
400 North Pine Island Road
Plantation, FL 33324

GRETTER CANCELO
JULIO CESAR MITJANS

**ACCOUNT #**

| | | |
|---|---|---|
| | | 092 |
| Cycle | | 26 |
| Enclosures | | 0 |
| Page | | 2 of 3 |

## WITHDRAWALS (CONTINUED)

| | | |
|---|---|---|
| 02/02 | Iu65 Premium & B Flblue Aca Julio Mitjans | 1,391.36 |
| 02/07 | ST Gregory | 1,295.10 |
| 02/08 | EB to Checking # | 10,000.00 |
| 02/16 | D.V.D. Inc. | 347.97 |
| 02/22 | EB to Now Card | 7,493.92 |
| 02/22 | Recurring Card Transaction ST Jude Main Do  8398 800-822-6344  TN 38105   5380 | 40.00 |
| 02/22 | Daimlertruckfin | 722.26 |
| 02/22 | MacYs | 2,079.53 |
| 02/23 | Capital One | 53.46 |
| 02/25 | Recurring Card Transaction Netflix.Com | 21.61 |

Total Withdrawals $26,875.45

| | Total For This Statement Period | Total Calendar Year-to-Date |
|---|---|---|
| Total Overdraft Fees (may include waived fees) | 0.00 | 0.00 |
| Total Returned Item Fees (may include waived fees) | 0.00 | 0.00 |

## CHECKS

## DAILY BALANCE SUMMARY

**You may request account disclosures containing
terms, fees, and rate information (if applicable)
for your account by contacting any Regions office.**

**REGIONS**

Regions Bank
Plantation
400 North Pine Island Road
Plantation, FL 33324

GRETTER CANCELO
JULIO CESAR MITJANS

| ACCOUNT # | ████████████ |
|---|---|
| | 092 |
| Cycle | 26 |
| Enclosures | 0 |
| Page | 2 of 3 |

## WITHDRAWALS (CONTINUED)

| Date | Description | Amount |
|---|---|---|
| 03/07 | ST Gregory ██████████ | 1,295.10 |
| 03/16 | D.V.D. Inc. ████████████ | 347.97 |
| 03/21 | EB to Checking # | 20,000.00 |
| 03/21 | Recurring Card Transaction ST Jude Main Do  8398 800-822-6344  TN 38105   5380 | 40.00 |
| 03/21 | MacYs ███████████ | 16.09 |
| 03/21 | Barclaycard US | 161.22 |
| 03/21 | Shop Your Way ███████ | 300.00 |
| 03/21 | Daimlertruckfin | 722.26 |
| 03/25 | Recurring Card Transaction Netflix.Com ████████ ████ ████ | 21.61 |
| | **Total Withdrawals** | **$26,207.65** |

| | Total For This Statement Period | Total Calendar Year-to-Date |
|---|---|---|
| Total Overdraft Fees (may include waived fees) | 0.00 | 0.00 |
| Total Returned Item Fees (may include waived fees) | 0.00 | 0.00 |

## CHECKS

| Date | Check No. | Amount | | | |
|---|---|---|---|---|---|



Regions Bank
Plantation
400 North Pine Island Road
Plantation, FL 33324

GRETTER CANCELO
JULIO CESAR MITJANS

**ACCOUNT #**

092

| | | |
|---|---|---|
| Cycle | | 26 |
| Enclosures | | 0 |
| Page | | 2 of 3 |

## WITHDRAWALS (CONTINUED)

| | | |
|---|---|---|
| 04/18 | D.V.D. Inc. | 347.97 |
| 04/18 | EB to Checking # | 16,000.00 |
| 04/21 | Recurring Card Transaction ST Jude Main Do  8398 800-822-6344  TN 38105    5380 | 40.00 |
| 04/21 | EB to Checking # | 2,000.00 |
| 04/21 | Daimlertruckfin | 722.26 |
| 04/25 | Recurring Card Transaction Netflix.Com | 21.61 |

Total Withdrawals  $22,220.39

| | Total For This Statement Period | Total Calendar Year-to-Date |
|---|---|---|
| Total Overdraft Fees (may include waived fees) | 0.00 | 0.00 |
| Total Returned Item Fees (may include waived fees) | 0.00 | 0.00 |

## CHECKS

## DAILY BALANCE SUMMARY

**TAKE ACTION TO HELP AVOID POSTAL DELAYS
WITH YOUR ACCOUNT STATEMENTS AND BILL
PAYMENTS! TAKE ADVANTAGE OF ONLINE
STATEMENTS AND ELECTRONIC BILL PAYMENT
AND TRANSFERS THROUGH REGIONS ONLINE
BANKING AND OUR MOBILE APP. FOR DETAILS,
VISIT REGIONS.COM/DIGITAL-BANKING.**

**REGIONS** Regions Bank
Plantation
400 North Pine Island Road
Plantation, FL 33324

1

GRETTER CANCELO
JULIO CESAR MITJANS

**ACCOUNT #**

| | |
|---|---|
| | 092 |
| Cycle | 26 |
| Enclosures | 0 |
| Page | 2 of 4 |

## WITHDRAWALS (CONTINUED)

| Date | Description | Amount |
|---|---|---|
| 06/02 | Dvcmc Assoc Mgr. | 118.37 |
| 06/02 | Iu65 Premium & | 268.32 |
| 06/02 | Iu65 Premium & | 268.32 |
| 06/02 | Iu65 Premium & | 1,391.36 |
| 06/06 | MacYs | 189.57 |
| 06/16 | D.V.D. Inc. | 347.97 |
| 06/21 | Daimlertruckfin | 722.26 |
| 06/22 | Card Purchase Alsac ST Jude C  8398 901-5782381   TN 38105   5380 | 40.00 |
| 06/23 | Returned Deposit Item # of Itm(S)  0001 | 1,837.49 |
| 06/23 | EB to | 3,012.16 |
| 06/27 | Recurring Card Transaction Netflix.Com | 21.61 |
| 06/28 | Shop Your Way | 1,184.03 |
| 06/30 | Broward County | 3,003.79 |
| | Total Withdrawals | $13,476.96 |

## FEES

## RETURNED CHECKS

## CHECKS

* Break In Check Number Sequence.

## DAILY BALANCE SUMMARY



**REGIONS**

Regions Bank
Plantation
400 North Pine Island Road
Plantation, FL 33324

1

GRETTER CANCELO
JULIO CESAR MITJANS

**ACCOUNT #**

092

| | Cycle | 26 |
| | Enclosures | 0 |
| | Page | 2 of 4 |

## WITHDRAWALS (CONTINUED)

| 06/02 | Dvcmc Assoc Mgr. | 118.37 |
| 06/02 | Iu65 Premium & B | 268.32 |
| 06/02 | Iu65 Premium & | 268.32 |
| 06/02 | Iu65 Premium & | 1,391.36 |
| 06/06 | MacYs | 189.57 |
| 06/16 | D.V.D. Inc. | 347.97 |
| 06/21 | Daimlertruckfin | 722.26 |
| 06/22 | Card Purchase Alsac ST Jude C  8398 901-5782381   TN 38105   5380 | 40.00 |
| 06/23 | Returned Deposit Item # of Itm(S)  0001 | 1,837.49 |
| 06/23 | EB to | 3,012.16 |
| 06/27 | Recurring Card Transaction Netflix.Com | 21.61 |
| 06/28 | Shop Your Way | 1,184.03 |
| 06/30 | Broward County | 3,003.79 |

Total Withdrawals $13,476.96

## FEES

## RETURNED CHECKS

## CHECKS

* Break In Check Number Sequence.

## DAILY BALANCE SUMMARY



**REGIONS** Regions Bank
Plantation
400 North Pine Island Road
Plantation, FL 33324

1

GRETTER CANCELO
JULIO CESAR MITJANS

| | ACCOUNT # | |
|---|---|---|
| | | 092 |
| Cycle | | 26 |
| Enclosures | | 0 |
| Page | | 2 of 3 |

## WITHDRAWALS (CONTINUED)

| 07/22 | Card Purchase Alsac ST Jude C 8398 901-5782381 TN 38105 5380 | 40.00 |
|---|---|---|
| 07/25 | Recurring Card Transaction Netflix.Com | 21.61 |
| 07/28 | Shop Your Way | 35.98 |

| | Total Withdrawals | $4,347.77 |
|---|---|---|

| | Total For This Statement Period | Total Calendar Year-to-Date |
|---|---|---|
| Total Overdraft Fees (may include waived fees) | 0.00 | 0.00 |
| Total Returned Item Fees (may include waived fees) | 0.00 | 36.00 |

## CHECKS

## DAILY BALANCE SUMMARY

**REGIONS BANK AND THE REGIONS FOUNDATION
ARE COMMITTED TO MAKING A POSITIVE
IMPACT ON THE FINANCIAL HEALTH OF THE
INDIVIDUALS, BUSINESSES AND COMMUNITIES
WE SERVE. PLEASE VISIT REGIONS.COM/
COMMUNITYENGAGEMENT TO READ THE 2021
COMMUNITY ENGAGEMENT REPORT AND TO SEE
HOW REGIONS BANK AND THE REGIONS
FOUNDATION ARE HELPING OUR NEIGHBORS
ACHIEVE THEIR FINANCIAL GOALS.**

**REGIONS**
Regions Bank
Plantation
400 North Pine Island Road
Plantation, FL 33324

GRETTER CANCELO
JULIO CESAR MITJANS

1

<mark>REGIONS PREFERRED BANKING</mark>

**ACCOUNT #**

| | |
|---|---|
| | 092 |
| Cycle | 26 |
| Enclosures | 0 |
| Page | 1 of 3 |

### LIFEGREEN CHECKING
July 30, 2022 through August 31, 2022

| SUMMARY | | | |
|---|---|---|---|
| **Beginning Balance** | $6,854.01 | Minimum Balance | $2,096 |
| Deposits & Credits | $9,004.77 + | Average Balance | $6,171 |
| Withdrawals | $4,468.97 – | | |
| Fees | $0.00 – | | |
| Automatic Transfers | $0.00 + | | |
| Checks | $7,500.00 – | | |
| **Ending Balance** | $3,889.81 | | |

| DEPOSITS & CREDITS | | |
|---|---|---|
| 08/02 | Mobile Deposit-Avail Tonight | 1,566.42 |
| 08/10 | Mobile Deposit-Avail Tonight | 1,793.31 |
| 08/16 | Mobile Deposit-Avail Tonight | 1,837.50 |
| 08/16 | Mobile Deposit-Avail Tonight | 1,793.32 |
| 08/24 | Mobile Deposit-Avail Tonight | 2,014.22 |
| | Total Deposits & Credits | $9,004.77 |

| WITHDRAWALS | | |
|---|---|---|
| 08/02 | Fpl Direct Debit Elec | 99.84 |
| 08/02 | Dvcmc Assoc Mgr. | 118.37 |
| 08/02 | Iu65 Premium & B | 268.32 |
| 08/02 | Iu65 Premium & B | 268.32 |
| 08/02 | Iu65 Premium & B | 1,391.36 |
| 08/02 | Freedom Life Ins Ins. | 991.70 |
| 08/16 | D.V.D. Inc. | 347.97 |
| 08/22 | Card Purchase Alsac ST Jude C  8398 901-5782381   TN 38105   5380 | 40.00 |
| 08/22 | Daimlertruckfin | 722.26 |

---

**For all your banking needs, please call Regions Preferred Banking Center at 1-800-761-2265
or visit us on the Internet at www.regions.com. (TTY/TDD 1-800-374-5791)**

**For new purchase or refinance mortgage information, contact your
Mortgage Loan Originator, Carmen Ortega, NMLS 1538700, at (305)924-9940
or online at www.regionsmortgage.com/carmenortega.**

**For payment and other information about your existing mortgage loan, contact Mortgage
Servicing at 1-800-986-2462 and for  Home Equity loans call 1- 800-231-7493.**



**Thank You For Banking With Regions!**
2022 Regions Bank Member FDIC. All loans subject to credit approval.

**REGIONS**

Regions Bank
Plantation
400 North Pine Island Road
Plantation, FL 33324

GRETTER CANCELO
JULIO CESAR MITJANS

**ACCOUNT #** ███████

|  |  |
|---|---|
|  | 092 |
| Cycle | 26 |
| Enclosures | 0 |
| Page | 2 of 3 |



## WITHDRAWALS (CONTINUED)

| Date | Description | Amount |
|---|---|---|
| 11/02 | EB to  Vc 8367 █████ | 1,000.00 |
| 11/02 | EB to Checking #████████████████ | 4,923.00 |
| 11/05 | ST Gregory ███████████████████ | 1,295.10 |
| 11/16 | D.V.D. Inc. ██████████████ | 347.97 |
| 11/17 | EB to Checking ███████ | 10,000.00 |
| 11/22 | Recurring Card Transaction ST Jude Main Do  8398 800-822-6344  TN 38105    5380 | 40.00 |
| 11/22 | Mbfs.Com ███████████████ | 722.26 |
| 11/26 | Recurring Card Transaction Netflix.Com ████████████ | 19.45 |
| 11/30 | Fpl Direct Debit Elec ██████████ | 73.53 |

Total Withdrawals $20,365.91

|  | Total For This Statement Period | Total Calendar Year-to-Date |
|---|---|---|
| Total Overdraft Fees (may include waived fees) | 0.00 | 0.00 |
| Total Returned Item Fees (may include waived fees) | 0.00 | 0.00 |

## DAILY BALANCE SUMMARY

**AS OF 10-1-21, NEW US POSTAL SERVICE
STANDARDS MAY CAUSE DELIVERY DELAYS FOR
1ST CLASS MAIL AND PERIODICALS. TO AVOID
DELAYS WITH YOUR ACCOUNT STATEMENTS AND
PAY BILLS QUICKLY AND CONVENIENTLY, TAKE
ADVANTAGE OF ONLINE STATEMENTS AND
ELECTRONIC BILL PAYMENT AND TRANSFERS
THROUGH REGIONS ONLINE BANKING AND OUR
MOBILE APP. FOR DETAILS, PLEASE VISIT
REGIONS.COM/DIGITAL-BANKING.**

**REGIONS**
Regions Bank
Plantation
400 North Pine Island Road
Plantation, FL 33324

GRETTER CANCELO
JULIO CESAR MITJANS
███████████4305

**ACCOUNT #** ████████

|  |  |
|---|---|
|  | 092 |
| Cycle | 26 |
| Enclosures | 0 |
| Page | 2 of 3 |



## WITHDRAWALS

| Date | Description | Amount |
|---|---|---|
| 12/02 | Dvcmc Assoc Mgr. | 102.87 |
| 12/02 | Iu65 Premium & ███████████ | 252.58 |
| 12/02 | Iu65 Premium & ███████████ | 252.58 |
| 12/02 | Iu65 Premium & ███████████ | 1,259.78 |
| 12/02 | Broward County ███████████ | 12,270.80 |
| 12/06 | ST Gregory Catho ██████ | 1,295.10 |
| 12/06 | Shop Your Way ██████ | 1,362.68 |
| 12/06 | Capital One ████████ | 1,500.00 |
| 12/16 | D.V.D. Inc. ██████ | 347.97 |
| 12/21 | Recurring Card Transaction ST Jude Main Do 8398 800-822-6344 TN 38105 5380 | 40.00 |
| 12/21 | Daimlertruckfin ██████ | 722.26 |
| 12/27 | Recurring Card ████████ | 19.45 |
| 12/29 | EB to Checking #███████████ | 30,000.00 |
| 12/30 | Fpl Direct Debit ████████ | 73.01 |
| 12/30 | PIN Purchase ████████ 5372 | 3,500.00 |

Total Withdrawals **$52,999.08**

|  | Total For This Statement Period | Total Calendar Year-to-Date |
|---|---|---|
| Total Overdraft Fees (may include waived fees) | 0.00 | 0.00 |
| Total Returned Item Fees (may include waived fees) | 0.00 | 0.00 |

## DAILY BALANCE SUMMARY

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|

**You may request account disclosures containing
terms, fees, and rate information (if applicable)
for your account by contacting any Regions office.**



Hello my name is Bryan, and I have started a fundraiser for my late friend and colleague, Jamie Tindall who recently and suddenly passed away.
As anyone who knew Jamie would tell you, Jamie took a lot of pride in his work and this facility. He loved aviation and I am happy to be able to put something special together to honor his memory at his home airport he dedicated nearly 30 years to. It is with this in mind that I am in the process of putting together a memorial for Jamie here at his home away from home, the fuel facility. We have a beautiful personalized bench and seating area planned out and are in the process of getting all necessary approvals for the creation of this memorial for Jamie.

Jamie is survived by his lovely wife Linda Tindall, their children and numerous grandchildren, and we appreciate your support in helping us to give the family a wonderful site to pay tribute to an awesome man.

*please also note that any funds in excess of what it costs to build the memorial site will go to assist his lovely family.

Thank you and god bless.

**Donate now**

Kadlec Associates
**$50** • 1 mo

Alejandro Parets
**$100** • 1 mo

James Dietrich
**$25** • 1 mo

Jonathan Lopez
**$20** • 1 mo

Julio Mitjans
**$500** • 1 mo

Anonymous
**$125** • 2 mos

Join this list. Donate now.

Close

AA   🔒 gofundme.com   ↻





## Cristina's unBRCAble spirit!

**$82,341** raised of $85,000 goal • 607 donors

| Share |
|:---:|

| Donate now |
|:---:|

 Kerri Bosworth is organizing this fundraiser on behalf of Eduardo and Cristina Safille.

September 13, 2022    •    Medical

Family and Friends,

I am sharing this story with all of you, in the hopes that

 🔒 gofundme.com

**11:41**

I am sharing this story with all of you, in the hopes that you can join me in helping to save the life of Cristina (Francois) Safille.

At the tender age of 33, Cristina was expecting her 6th child with husband Eddie Safille. As Cristina approached the final 6 weeks of pregnancy, she began experiencing an unusual pain in her chest. Preliminary testing revealed a tumor in her breast and an emergency C-section was performed to start life-saving treatment for Cristina. Sweet little Stella entered the world 6 weeks early and was immediately placed in NICU. During a time when a mother's concern should only be to hold her newborn baby, Cristina was now entering the fight of her life. Additional testing confirmed breast cancer, which had spread to her lymph nodes.

Time was of the essence, and chemotherapy treatments ensued with the hopes of slowing the growth of this tumor enough to develop a plan for surgery.

Significant complications came with Stella's early birth. She is not able to come home yet and remains under the watchful eye of the NICU team with the hopes that she will be strong enough to join her siblings soon. Even then, Stella will need additional care.

Two months have passed. Two months of constant doctor visits, countless testing and MRIs. Two months of sickness. Two months of not being able to hold her

| Share | Donate |
|-------|--------|

























